**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3590-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GRADY RADFORD,

    Defendant-Appellant.

_____

        Submitted March 21, 2018 — Decided August 13, 2018

        Before Judges Fuentes and Suter.

        On appeal from Superior Court of New Jersey,
        Law Division, Cumberland County, Indictment
        No. 09-07-0600.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (David J. Reich, Designated
        Counsel, on the brief).

        Damon G. Tyner, Atlantic County Prosecutor,
        attorney for respondent (John J. Santoliquido,
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

    Defendant Grady Radford appeals from the order of the Criminal

Part denying his post-conviction relief (PCR) petition. We affirm.

Defendant was forty-six years old and worked as a registered nurse at Bridgeton Hospital at the time the State alleged he sexually assaulted a seventeen-year-old girl, A.M.[1], who had been admitted as a psychiatric patient in the Hospital's Crisis Center. According to A.M., defendant sexually assaulted her on multiple occasions from June 2008 to July 2008. On July 22, 2009, a Cumberland County[2] Grand Jury returned an indictment charging defendant with three counts of second degree sexual assault of A.M., N.J.S.A. 14-2(c), two counts of fourth degree criminal sexual contact of A.M. and another victim, A.H., N.J.S.A. 2C:14-3(b), and one count of third degree tampering with a witness, A.H., N.J.S.A. 2C:28-5(a).

Defendant retained private counsel, who employed a private investigator to probe into the State's case and develop an appropriate defense strategy. The record contains a number of internal memoranda written by defense counsel, as well as reports submitted by the investigator memorializing the discussions they had with defendant and summarizing the strengths and weaknesses

---

[1]  We use initials or pseudonyms to refer to the victims of these crimes pursuant to Rule 1:38-3(c)(9) and N.J.S.A. 2A:82-46(b).

[2]  Although this case originated in Cumberland County, the Attorney General transferred the prosecution to Atlantic County due to a conflict of interest with the Cumberland County Prosecutor's Office.

A-3590-16T4

of the State's case. These records show defendant believed a key aspect of his defense strategy involved the physical layout of the nurses' station, where A.M. alleged she was sexually assaulted by defendant. An internal confidential memorandum written by defense counsel on March 26, 2010, documents in great detail what was discussed at a pretrial conference held before the trial judge concerning the State's plea offer. Defense counsel noted that the trial judge viewed the State's offer of probation to be very generous to defendant.

On June 15, 2010, defendant negotiated an agreement with the State through which he agreed to plead guilty to fourth degree child abuse of A.M., N.J.S.A. 9:6-3, and the petty disorderly persons offense of harassment, for offensive touching of A.H., N.J.S.A. 2C:33-4(b). In exchange, the State agreed to dismiss the charges in the indictment and recommend that the court sentence defendant to a term of probation, subject to the mandatory fines and penalties. Although defendant would not be required to register as a convicted sex offender under N.J.S.A. 2C:7-1 to -19, he was required to surrender his nursing license "in perpetuity."

The record of the plea hearing shows the judge addressed defendant directly as required under Rule 3:9-2, to ensure he understood the terms of the plea agreement. With respect to the

3                                                          A-3590-16T4

forfeiture of his nurse's license, the judge asked defendant: "Do you understand that the surrendering of that license means that you will never be able to hold an R.N. license again in this or any other State?" Defendant responded: "[T]hat's fine. Yes." After reviewing the content of the plea form, the judge asked defendant: "One more time. Do you feel that you need more time to talk to [defense counsel] about any of these issues?" Defendant responded: "No."

In response to his attorney's and the judge's questions, defendant provided the following factual basis in support of his guilty plea for fourth degree child abuse:

> Q. Mr. Radford, on dates between June 2nd of 2008 and July 5th of 2008, were you in the City of Bridgeton?
>
> A. Yes.
>
> Q. Between those dates, were you employed by the Crisis Unit in the City of Bridgeton?
>
> A. Yes.
>
> Q. While employed by the Crisis Unit, did you come to know a female minor with the initials "A.M"?
>
> A. Yes.
>
> Q. On one of those dates between June 2nd of 2008 and July 5th of 2008, did you place your hand under A.M.'s shirt and over her bra on her breast?
>
> A. Yes.

Q. Do you agree that this singular act would tend to debauch A.M.'s morals?

A. Yes.

Q. And do you agree that that act constitutes an act of abuse under [N.J.S.A.] 9:6-3, the statute that you . . . went over?

A. Yes.

THE COURT: Let me ask you a few more questions of you . . . .

By this "Crisis Unit" you are talking about . . . the Child and Adolescent Unit[,] or . . . the Intermediate Unit I believe it is referred to at Bridgeton Hospital of South Jersey Healthcare Systems; is that correct?

A. That's correct; yes.

THE COURT: And you were employed there at the time; is that correct?

A. Yes.

THE COURT: And in that capacity, do you agree that you had care, custody, or control of a child who is referred to as . . . "A.M."?

A. Yes.

THE COURT: And you were, in fact, caring for her; is that correct?

A. Yes.

THE COURT: And she was a patient at that unit; is that correct?

A. Yes.

          . . . .

THE COURT: And at the time that this happened, she was 17 years old; is that correct?

A. Yes.

Defendant provided the following factual basis with respect to his guilty plea to the petty disorderly persons offense of harassment involving A.H.:

Q. Mr. Radford, . . . on dates between June 2nd of 2008 and July 5th of 2008, were you in the City of Bridgeton?

A. Yes.

. . . .

Q. Were you employed there as a registered nurse?

A. Yes.

Q. While employed at the Crisis Unit, did you come to know a female minor with the initials "A.H."?

A. Yes.

Q. All right. On one of those dates between June 2nd of 2008 and July 5th of 2008, while employed at the Crisis Unit in Bridgeton, did you grab A.H.'s buttocks over her clothes?

A. Yes.

Q. Do you agree that this singular act constitutes harassment by offensive touching?

A. Yes.

The sentencing hearing occurred on July 16, 2010. A.M. and members of her immediate family addressed the court and described

the great emotional and psychological harm they had suffered as a result of defendant's criminal conduct. They were greatly disappointed and frustrated that the plea agreement did not authorize the court to impose a term of imprisonment. In response, the prosecutor addressed the court as follows:

> I myself have 27 years [of] experience as a Prosecutor in the criminal justice system, trying cases of this type. These are perhaps . . . the most difficult kinds of cases to resolve. And in this particular case, Judge, there were significant proof issues. And they are significant enough that I and [the First Assistant Prosecutor and the Prosecutor] . . . were doubtful about being able to prevail at trial. And by that I mean prove these charges beyond a reasonable doubt.
>
> . . . .
>
> <u>I have conferred with [defense counsel] on many, many occasions regarding this case and regarding possible pleas</u>. I am satisfied that the plea agreement that is presently entered into which calls for a period of probation, a criminal conviction for Mr. Radford, and a voluntary surrender of his nursing license in perpetuity is the most we are going to get by way of a plea in this case, which leaves us with the alternative of going to trial. So that's the alternative that we have, Judge.
>
> [(Emphasis added).]

Defendant declined to make any statement or address the court. Before imposing sentence, the judge made the following comments with respect to his views concerning the fairness of the plea agreement:

Now I have an advantage in this case. I've had other cases where victims have come in and objected. But I have an advantage in this case because at . . . a stage of this case before a plea was entered, I was asked to review the full hospital records from Bridgeton Hospital . . . where the victim was a patient for a lengthy period of time.

I also have an advantage in this case because for almost an eight-year period, I was the Judge who went two weeks in Bridgeton Hospital and conducted civil commitment hearings. Although . . . I'm sure this victim appeared before me many times at those hearings.

The Bridgeton Intermediate Unit is a unit that is designed, set-up, and functions to deal with the our most damaged - - our most vulnerable, our most in need - - citizens. It is a unit - - because I dealt with these children for eight years - -  I have a great deal of respect for what they are able to do and how they're able to get these kids back on their feet and get better.

. . . .

But I, . . . have to look at my role as a Judge in deciding whether the Prosecutor has abused his discretion. I have to look at what I saw in [the victim's] records. I know what lawyers can do at trial; I know what defense lawyers can do to witnesses at trial; I know what defense lawyers can do to witnesses at trial. I know how difficult this trial would have been on this victim. I saw these records. I spent hours and hours and hours going through these records. I felt that, myself, I was violating this victim by going through her most personal records. And I know how difficult this trial would have been.

I am not going to articulate things I saw; I'm not going to put the victim through any

A-3590-16T4

particular further damage here. But by reviewing those records and by hearing the comments of the Prosecutor, I cannot conclude that this Prosecutor is abusing his discretion. And therefore, I won't reject this plea agreement.

The court sentenced defendant in accordance with the plea agreement to a three-year term of probation, subject to the mandatory fines and penalties, and to defendant voluntarily surrendering his Registered Nurse's license. Defendant did not file a direct appeal challenging any aspect of his sentence or the propriety of the plea hearing.

On August 5, 2014, defendant filed what appears to be a pro se PCR petition. Thereafter, defendant's PCR counsel filed an amended petition in which defendant claimed, inter alia, that his original counsel "failed to discuss or recommend any measures that [defendant] could take to gain access to the facility [(Bridgeton Hospital)], its records or its employees for the purpose of investigating and developing the defense." The matter came before the PCR judge for oral argument on February 3, 2017. The judge found defendant did not make out a prima facie case of ineffective assistance of counsel warranting an evidentiary hearing. The PCR judge noted that defense counsel's memoranda documented the discussions he had with defendant concerning access to the location. The PCR judge concluded that defendant failed to show

"that trial counsel deviated from [his] responsibilities in failing to conduct the investigation." The PCR judge denied defendant's petition in an order dated February 3, 2017.

Defendant now appeals raising the following arguments:

POINT I

THE COURT BELOW ERRED IN DENYING [DEFENDANT'S] PETITION WITHOUT AN EVIDENTIARY HEARING CONCERNING HIS CLAIM THAT HIS COUNSEL'S FAILURE TO PROPERLY INVESTIGATE AND PREPARE HIS CASE DEPRIVED HIM OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND COMPELLED HIM TO PLEAD GUILTY.

POINT II

THE COURT BELOW ERRED IN DENYING [DEFENDANT'S] REQUEST FOR AN EVIDENTIARY HEARING IN VIEW OF NEWLY DISCOVERED EVIDENCE OF DEPOSITION TESTIMONY BY [DEFENDANT'S] ACCUSER WHICH CONTRADICTED HER EARLIER STATEMENT.

New Jersey courts have adopted the rule formulated in Strickland v. Washington, 466 U.S. 668 (1984) for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment. See State v. Fritz, 105 N.J. 42 (1987). To show ineffective assistance of counsel, a defendant must: (1) "show that counsel's performance was deficient" such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the

conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Ibid.

To establish a prima facie case of ineffective assistance of counsel when a defendant pleads guilty, a defendant must produce evidence that: (1) "counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases;'" and (2) "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'"  State v. Agathis, 424 N.J. Super. 16, 23 (App. Div. 2012) (alteration in original) (quoting State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)).  Defendant did not satisfy this standard.  The record shows defense counsel conducted a thorough investigation of the evidence the State had against defendant and used the fruits of these efforts to negotiate an extremely favorable plea agreement.  Defendant thereafter made a strategic, well-informed decision to accept the State's plea offer to avoid the uncertainty of a jury trial with a potentially emotionally compelling juvenile victim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3590-16T4